# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **CRIMINAL ACTION 09-00233-KD-B** |
| | ) | |
| **GARY LEE WEBB,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

This matter is before the Court on Defendant's Motion to Suppress (Doc. 18). A hearing on Defendant's motion to suppress was held on December 23, 2009. The defendant contends that all items recovered in the search of his home on April 2, 2009, should be suppressed because his consent to search his home was obtained through deception and because he did not read the consent forms before he signed them. The court rejects both contentions.

On April 2, 2009, FBI agents approached Webb outside his place of employment. The ensuing conversation was recorded and offered in evidence as Government's Exhibit #1.[1] The court has reviewed the recording and summarizes as follows: The agent spoke with Webb throughout the conversation in a very non-threatening and non-coercive manner. The agent initiated the conversation by saying that Webb's name had come up in an investigation and that there was child pornography that had been downloaded from Webb's gigatribe account. The agent then expressed concern for the children involved and stated that he wanted to find these kids and also find the source of these pictures. He then specifically stated that the reason he was interviewing Webb was

---

[1] Also admitted into evidence was a defense-prepared transcript of the conversation. As admitted by defense counsel, the transcript omits portions of the conversation and misinterprets other parts of the conversation.

because there were 110 images downloaded from his gigatribe account and he wanted to trace the images back as far as he could. The agent also emphasized that Webb was not under arrest. The agent further elaborated that the consent form was to allow them to trace the images and that they were wanting to search strictly the computer.

In response Webb denied that he had downloaded any child pornography and stated that if he ever came across any child pornography that he deleted it. Webb stated that child pornography was "sick" and immediately agreed to let the agent pick up his computer from his house. Webb subsequently signed three consent forms; consent to search home, consent to assume online presence, and consent to search computer. The agent did not explain the forms in any detail. Webb signed the forms immediately; the slight pause on the recording likely indicates that Webb did not read the forms before signing them.

A defendant's consent to search is valid if the consent was given voluntarily. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). However, the consent need not be intelligent and knowing. Id. at 241; U.S. v. Garcia , 56 F.3d 418, 423-424 (2nd Cir. 1995) (providing that lack of awareness of possible consequences of the agents' entry into defendant's home, absent duress or coercion, did not vitiate consent).

In evaluating voluntariness of consent, a court "should look at several indicators, including the presence of coercive police procedures, the extent of the defendant's cooperation with the officer, the defendant's awareness of his right to refuse consent, the defendant's education and intelligence, and the defendant's belief that no incriminating evidence will be found." United States v. Simms, 385 F.3d 1347, 1355 (11th Cir. 2004) (quoting United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001)). "[A] suspect need not know of his right to withhold consent in order for the consent

to be valid." Tukes v. Dugger, 911 F.2d 508, 516 (11th Cir. 1990) (citing Schneckloth v. Bustamonte 412 U.S. at 248-249)). In this case there is no evidence of any coercion or duress imposed by the FBI agent. Moreover, there is no evidence or indication from the recording that the agent prevented Webb from thoroughly reviewing the documents before Webb elected to sign them. Based on the recorded conversation, Webb appears to be of at least average intelligence.

Webb's primary argument is that he was tricked into consenting because he believed that the agent's purpose was to find and protect the children that were depicted in the images. The recording clearly supports a finding that the agent's statement led Webb (or any reasonable person) to believe that the agent's primary purpose for asking for consent was to find the abused children. However this does not render the consent involuntary. In Tukes v. Dugger, 911 F.2d 508, 516 (11th Cir. 1990) the Court rejected the defendant's "contention that police are under an obligation to tell a suspect that he is the sole suspect when they seek consent for a search[]" and held that "[t]o require that a suspect be fully aware of the investigator's view of the degree of the suspect's involvement in the offense would contradict *Schneckloth*." The same reasoning is applicable in this instance.

Moreover, the recording does not support a finding that the agent materially misrepresented the nature of the inquiry. See U.S. v. Prudden, 424 F.2d 1021, 1033 (5th Cir. 1970) (providing that "the mere failure of a revenue agent . . . to warn the taxpayer that the investigation may result in criminal charges, absent any acts by the agent which materially misrepresent the nature of the inquiry, do not constitute fraud, deceit and trickery[]"). No doubt, it is a primary focus of the FBI in all child pornography cases to locate the producer of the pornography as well as the abused children; thus the court finds these statements to be true and not misleading. As to Webb's potential exposure to criminal prosecution, in this case the agent clearly told Webb that he already knew that

3

child pornography images were downloaded to Webb's gigatribe account.  The fact that the agent did not explain to Webb that Webb could be criminally prosecuted for possession of child pornography was not a material misrepresentation.

Also, even if the court were to determine that the consent was obtained in part by trickery, it would appear that this would not render the consent involuntary.  In the context of whether a confession is voluntary the Eleventh Circuit has held, "[i]t is clear, that the police's use of a trick alone will not render a confession involuntary." U.S. v. Castaneda-Castaneda, 729 F.2d 1360, 1363 (11th Cir. 1984) (citing Frazier v. Cupp, 394 U.S. 731 (1969)) (finding that the fact that police in interrogation of defendant falsely told defendant that defendant's companion had confessed, though relevant, was insufficient to make otherwise voluntary confession by defendant inadmissible); United States ex rel. Brandon v. LaVallee, 391 F. Supp. 1150, 1152 (S.D.N.Y. 1974) (concluding that "[t]he fact that the detectives lied to the petitioner to elicit the confession does not render it involuntary as a matter of law[]"); Moore v. Hopper, 389 F. Supp. 931, 935 (M.D. Ga. 1974), aff'd, 523 F.2d 1053 (5th Cir. 1975) (holding that "[j]ust as trickery may be employed prior to the act to detect the offense, it may be utilized after the act to identify the offender[]")).

In sum, the totality of the circumstances indicate that Webb's consent to search was not coerced or obtained under duress but was voluntary.  Accordingly, the motion to suppress (Doc. 18) is **DENIED.**

**DONE** and **ORDERED** this the **4th** day of **January 2010.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**